NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0663n.06
Filed: September 6, 2007

Case No. 05-2522

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| LAWRENCE SALES, | ) | DISTRICT OF MICHIGAN |
| also known as Lawrence Sales III, | ) | |
| also known as Pee Wee, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: GUY, BATCHELDER, and GILMAN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Lawrence Sales, also

known as "Pee Wee," appeals his conviction relating to firearms possession. Additionally, he

appeals the district court's determination that (1) probable cause supported the search warrant issued

for Sales's residence, (2) the Government did not need to reveal the confidential informant used in

this case and (3) any prosecutorial misconduct did not trigger a mistrial. Because we conclude that

sufficient evidence supports Sales's conviction and that the district court did not err in its disposition

of Sales's motions, we affirm the conviction. We remand, however, with instructions to the district

court to merge Sales's convictions under 18 U.S.C. § 922(g).

**I. BACKGROUND**

On July 9, 2003, a confidential informant (CI) advised Romulus, Michigan, police officers

that he/she purchased marijuana on July 7, 2003, from Sales. The CI purchased the drugs at Sales's residence in Romulus, Michigan, and while at the residence, observed two semi-automatic assault weapons and approximately 10 other handguns and long guns. Also on July 9, the Romulus Police Department directed the CI to contact Sales and purchase marijuana from him. The CI then participated in a controlled buy and purchased marijuana from Sales, using Romulus Police Department money.

On July 10, 2003, Romulus Police Department officers and two Alcohol, Tobacco and Firearms ("ATF") agents executed a state search warrant at Sales's residence. *Id.* In the upstairs northeast bedroom, officers located a disassembled .25 caliber firearm, with a loaded magazine, two banana clips containing assault rifle rounds, a variety of additional ammunition, a small razor blade, and coin-sized ziplock baggies. In the same room, officers found a large digital scale and $170 in cash.

Downstairs, in a cabinet in the dining room, officers found a loaded Smith & Wesson .357 magnum revolver, several types of ammunition, including eight .12 gauge shotgun rounds, a clear plastic bag of suspected marijuana, two digital scales, nylon gun holsters, a cell phone, and walkie-talkies. *Id.* In the kitchen area, officers found an unloaded .12 gauge shotgun propped against a wall behind a door next to a stairwell that led upstairs. Also in the kitchen, officers found a black plastic bag containing two banana clips, fully loaded with rifle rounds, and receipts in Sales's name. In the refrigerator, hidden in a charcoal bag, police found a one gallon ziplock bag containing six smaller individual bags of marijuana. *Id.*

The cabinet where officers found the loaded .357, the small digital scales, and a portion of the marijuana was about fifteen feet away from the refrigerator containing the rest of the marijuana.

2

Additionally, police photographs of the kitchen area indicated that the shotgun and plastic bag containing ammunition were fairly close to the refrigerator. *Id.*

The officers arrested Sales and transported him to the Romulus police station where officers read him his *Miranda* rights. Sales waived these rights and admitted that he owned the firearms and the marijuana found at his residence. Sales further told the officers that he had sold marijuana out of his house, that he had been selling since he was thirteen years old, and that he had made a sale to his brother only two days prior to his arrest. Sales also stated that he understood it was illegal for him to have the firearms, but he nevertheless had them for "home protection."

On January 5, 2005, in the First Superseding Indictment, the federal grand jury indicted Sales on six counts relating to possession of firearms and narcotics. Counts One, Two, and Three charged Sales with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) — the .357 caliber revolver, the .12 gauge shotgun, and the .25 caliber semi-automatic pistol. In Count Four, the grand jury charged Sales with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. §841(a)(1). Count Five charged Sales with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and Count Six charged Sales with being a felon in possession of ammunition, in violation of 18 U.S.C. §922(g)(1).

On June 9, 2005, a jury found Sales guilty on all counts. On October 18, 2005, Sales received a sentence of 24 months' imprisonment for Counts One through Four and Six to run concurrently, and a consecutive mandatory 60-month sentence for Count Five. Sales timely appealed.

## II. ANALYSIS

### A. Search Warrant

Prior to trial, Sales moved to suppress the evidence seized when the officers searched his home, arguing that no probable cause supported the search warrant because the underlying affidavit lacked indicia of the veracity and reliability of the CI.

We review "'a district court's factual findings regarding motions to suppress for clear error and its legal conclusions *de novo*.'" *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (citation omitted). When the district court denies the motion, we consider the evidence "'in the light most favorable to the government.'" *Id.* (quoting *United States v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999)).

The Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. CONST. amend. IV. "Probable cause arises if there are 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "[I]n order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, [that] there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

A "[r]eview of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *Coffee*, 434 F.3d at 892. "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause in the absence of any indicia of the informant's reliability, courts insist that the

4

affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (internal citation omitted). So long as the issuing judge "can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *Coffee*, 434 F.3d at 893 (citation omitted).

In *Coffee*, a case factually similar to the present case, we upheld the district court's finding of probable cause. *Id.* at 895. We affirmed the district court's conclusion "that, although there were no statements in the affidavit about the reliability of the CI, Officer Adams'[s] statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant." *Id.* at 894; *see also United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (Officer's "corroboration of events that occurred during the controlled buy, as set forth in the affidavit, provide sufficient probable cause to sustain issuance of the search warrant.")

While Officer St. Andre's affidavit contains no facts supporting the CI's reliability, it does contain independent corroboration of the CI's information. Officer St. Andre saw the CI enter Sales's home after Sales invited the CI over to purchase marijuana. The CI went into Sales's home with Romulus police department money and came out with a small bag of material, which later tested positive for marijuana. *See Frazier*, 423 F.3d at 532 ("There must be 'a nexus between the place to be searched and the evidence to be sought.'") (citation omitted). The officers searched the CI and her/his vehicle for drugs before and after the buy. Under *Coffee* and *Jackson*, Officer St. Andre's corroboration of the CI's controlled buy provided sufficient probable cause for the issuance of the search warrant.

**B. CI's Identity**

Sales also sought disclosure of the CI's identity, arguing that the CI played an active role in the criminal activity. Based upon the prosecutor's representations to the court that he did not intend to use anything that happened between the CI and Sales at trial, the district court denied Sales's motion to disclose the CI's identity.

We review a district court's decision to deny a motion to disclose the identity of a confidential informant for abuse of discretion. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (citation and internal punctuation omitted).

The government has the privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). However, to invoke this privilege "the public interest in protecting the flow of information to the government" must outweigh "the defendant's need for disclosure of information in the preparation of a defense." *United States v. Straughter*, 950 F.2d 1223, 1232 (6th Cir. 1991).

Sales must "show how disclosure of the informant would substantively assist his defense" or "that disclosure is essential to a fair trial." *Moore*, 954 F.2d at 381. Where the defendant's claims are based on "mere conjecture or supposition about the possible relevancy of the informant's testimony," such claims are insufficient to warrant disclosure. *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) (citation omitted). We usually deny disclosure when the informer was not a participant, and instead "was a mere tipster or introducer." *Id.* at 1186 n.2.

Sales argues disclosure is essential here because the "CI would have explained deficiencies

6

in timing transactions and the times of events that were alleged in the affidavit." Sales's only support for this contention was that he *could* have a *possible* alibi because he "was not at the residence for the majority of the day and night in question." Sales's argument fails under *Sharp* and *Moore* because he only speculates as to what disclosure might do; he has not established that disclosure would have substantively assisted his defense or that disclosure was essential to a fair trial. Further, the CI in this case was merely a tipster, and not "an active participant in the events underlying the defendant's potential liability." *Sharp*, 778 F.2d at 1186 n.2. Sales was not charged for the events occurring during the controlled purchase made by the CI, but rather for the possession of the drugs and firearms the police located during the search of Sales's residence.

Sales also argues that the prosecutor placed the CI's "claims" "before the jury without giving Sales a chance to confront his accuser," in violation of the Sixth Amendment's Confrontation Clause; *see* U.S. CONST. amend VI. At trial, Officer St. Andre testified concerning the procurement of the search warrant for Sales's residence. Sales relies, in vain, on *United States v. Cromer,* 389 F.3d 662 (6th Cir. 2004). In *Cromer*, we found no violation of the Sixth Amendment's Confrontation Clause where the events or testimony in question "did not even put before the jury any statements made by the CI." *Cromer,* 389 F.3d at 676. Even if the officer's testimony revealed the CI's statements to the jury, the "confrontation right was not implicated because the testimony was provided merely by way of background." *Id.* In short, the "Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)).

Here, as Sales admits, "the confidential informant did not testify nor were [her/his] statements expressly used in the trial of Sales." Under *Cromer*, there was no violation of Sales's

7

Sixth Amendment right to confront his accusers. The district court did not abuse its discretion in denying Sales's motion to disclose the CI's identity.

## C. Sufficiency of the Evidence

### 1. Possession of a Firearm in Furtherance of a Drug Trafficking Offense

Following his conviction, Sales moved for Judgment of Acquittal, pursuant to Federal Rules of Criminal Procedural Rule 29(c), as to the charges of possessing a firearm in furtherance of a drug trafficking offense, *see* 18 U.S.C. § 924(c), and possession of drugs with intent to distribute. On appeal, Sales argues that insufficient evidence supported his conviction under 18 U.S.C. § 924(c), and the district court therefore erred by denying his motion to acquit.

"Decisions denying a motion for judgment of acquittal are reviewed *de novo* to determine the sufficiency of the evidence." *United States v. Hartsel*, 199 F.3d 812, 815 (6th Cir. 1999). Where defendants challenge the sufficiency of the evidence in a criminal trial, we inquire "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond any reasonable doubt.'" *United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

A person who, "during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States," possesses a firearm in furtherance of that crime is guilty of a violation of 18 U.S.C. § 924(c). Mere possession of a firearm on the premises where drug transactions take place will not by itself sustain a conviction under § 924(c). *See United States v. Mackey,* 265 F.3d 457, 462 (6th Cir. 2001). "In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *United States v. Swafford*, 385 F.3d 1026, 1028 (6th. Cir. 2004) (quoting *Mackey,* 265 F.3d

8

at 462).

When a defendant has a loaded firearm and places it in a strategic location where he can easily access it to protect his drugs and drug business, he possesses a firearm in furtherance of a drug trafficking offense. *See*, *e.g.*, *Mackey*, 265 F.3d at 462-63 (where an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house was easily accessible to the defendant and located near the scales and razor blades, "a reasonable jury could infer that the purpose of the firearm was to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested"), and *Swafford*, 385 F.3d at 1028 ("while the drugs were not found in the same room as the gun, the garage where they were found was easily accessible from the bedroom where Swafford and the gun were found"); *see also United States v. Mendizabal*, 214 F. App'x 496, 501 (6th Cir. 2006) (loaded firearm located in a safe alongside cocaine was positioned to provide protection for the cocaine).

Here, the police located a loaded .357 magnum in a cabinet that also contained two small digital scales, several small plastic bags filled with marijuana, several gun holsters, and walkie-talkies. The .357 was approximately 15 feet from the bag of marijuana the officers found in the refrigerator in the kitchen. The .12 gauge shotgun, albeit unloaded, was in the kitchen near a bag of rifle ammunition and the refrigerator containing marijuana. On these facts, a reasonable juror could conclude, beyond a reasonable doubt, that Sales possessed these weapons "in furtherance" of a drug trafficking crime.

## 2. Felon in Possession of a Firearm

Sales also alleges insufficient evidence existed to convict him of being a felon in possession of a firearm, specifically the .25 caliber handgun, because the gun was disassembled (Count Three).

The Government contends that we need not address this issue, and should instead remand this case to the district court for the limited purpose of merging the convictions and sentences on Counts One, Two, Three, and Six, which relate to Sales's possession of firearms and ammunition.

The Government relies on *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990), which held that separate ammunition and gun counts are appropriate at trial, "although they would merge for purposes of sentencing." Under *Throneburg*, "while the government may proceed to trial on multiple counts under § 922(g) of possession of a firearm and possession of ammunition, if the jury convicts on more than one count, the counts are merged" into a single conviction for the purposes of sentencing. *United States v. Love*, 1997 U.S. App. LEXIS 27928, at *18 (6th Cir. Oct. 6, 1997).

The Government contends that a new sentencing hearing would not be required since Sales already received concurrent 24-month sentences on these four counts. Whether or not sufficient evidence supports the conviction as to the .25 caliber handgun is immaterial since the jury also convicted Sales of possessing the two other firearms, and Sales does not challenge the sufficiency of the evidence as to those firearms. In any event, upon merging the § 922(g) counts, Sales would have only one felon in possession conviction and serve only one sentence. We agree that the case should be remanded so that the district court can effect such a merger.

**D. Motion for mistrial**

We review for abuse of discretion the denial of a motion for mistrial. *United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002). We must first "determine whether a prosecutor's remarks were improper, and then we determine whether the impropriety amounts to reversible error." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994). "There are two types of reversible error in this

area: improper remarks that are flagrant amount to per se reversible error; improper remarks that are not flagrant may amount to reversible error in certain circumstances." *United States v. Hargrove*, 416 F.3d 486, 493 (6th Cir. 2005).

In determining whether improper remarks were flagrant we consider four factors: "'(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.'" *Id.* (citing *Caroll*, 26 F.3d at 1385). However, even where remarks are not flagrant, the remarks may warrant reversal where (1) the proof of defendant's guilt was not overwhelming, (2) defense objected to the conduct, and (3) the district court failed to give a curative instruction. *See Hargrove*, 416 F.3d at 493.

On appeal, Sales cites two instances of improper comments made by the prosecutor, which he claims rendered his trial unfair. First, prior to trial Sales agreed to stipulate to his felon status (on the felon in possession charges), and the parties agreed that the government could not introduce any evidence of Sales's predicate felonies. In the prosecutor's opening statement, however, he said, "[Sales] has a .25 caliber pistol after he was arrested for narcotics in 1991 or 1992." Sales's counsel immediately requested a side bar and sought an immediate mistrial based on the prosecutor's mention of the 1991 narcotics arrest. The district court chastised the prosecutor for even mentioning anything relating to Sales's predicate felonies, issued a curative instruction to the jury, and denied Sales's motion for a mistrial. Following his conviction, Sales renewed his motion for a mistrial, and alternatively sought a new trial under Federal Rules of Criminal Procedure Rule 33(a), on the basis

11

of the prosecutor's comment.[1]

The second instance is the prosecutor's statement in closing argument that "when I attempted to get those notes before you he wouldn't let me, he objected." In his case-in-chief, the prosecutor had repeatedly sought to introduce the investigating officers' notes from their interrogations of Sales, but the district court denied every attempt. When the prosecutor made this comment, Sales's attorney immediately objected. The district court sustained the objection and responded to the prosecutor, "I wouldn't let you. It had nothing to do with [Sales's trial counsel]." Sales did not seek a mistrial based on this comment, nor did he raise it in his post-trial motion for a mistrial or new trial.

Both statements were improper, but we conclude that the statements were not flagrant, and therefore do not amount "to per se reversible error." *Hargrove*, 416 F.3d at 493. The prosecutor's comments did not likely mislead the jury, though they may have been somewhat prejudicial to Sales. The comments were isolated and made in the context of attorney statements, which the district court cautioned the jury did not constitute evidence. The prosecutor accidentally placed the first statement before the jury (he was reading from a document and not paying as much attention as he should have); in contrast, he certainly placed the second statement intentionally before the jury. The evidence, however, was overwhelming: The search of Sales's residence produced a large quantity of marijuana, materials used for measuring and packaging the marijuana, and multiple firearms. In

---

[1]With respect to this comment, Sales argues that the prosecutor violated *Old Chief v. United States*, 519 U.S. 172 (1997). Under *Old Chief*, it is unfairly prejudicial for prosecutors to introduce evidence on a previous felony offense where defendant offered to stipulate to his felon status. *Id.* at 174. Sales cites *Myers v. United States*, 198 F.3d 615, 618 (6th Cir. 1999), for the proposition that, under *Old Chief*, a district court abuses its discretion "when it rejects a defendant's offer to stipulate to the simple existence of prior felony convictions." However, neither *Old Chief* nor *Myers* applies to the case at hand. The prosecutor never introduced evidence of Sales's predicate felonies, nor did the court reject Sales's offer to stipulate to his prior felony convictions. This argument is without merit.

addition, Sales admitted that he owned the marijuana and the firearms, and further stated that he was currently a drug dealer, and had been one for a number of years.

Finally, we briefly consider whether, though not flagrant, the comments warrant reversal. *See Hargrove*, 416 F.3d at 493. Sales's claims fare no better here. The evidence against Sales was strong, and while his attorney did object to both comments, the district court quickly sustained the objections and provided curative instructions specifically addressing the prosecutor's comments. The district court did not abuse its discretion in denying a mistrial based on the prosecutor's improper comments.

## III. CONCLUSION

For the foregoing reasons, we **affirm** Sales's convictions, but **remand** this matter to the district court for the limited and purely ministerial purpose of merging the convictions and sentences of Sales's § 922 counts. No new sentencing hearing is required.