**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0465n.06

No. 18-5696

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DONNIE GARLAND, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Sep 04, 2019
DEBORAH S. HUNT, Clerk

BEFORE:  SUTTON, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Donnie Garland repeatedly sold methamphetamine to a confidential informant, who recorded one of their transactions with a microphone and four more with a hidden camera. Those recordings included debriefing sessions where FBI agents questioned the informant about the transactions.

Independent of that investigation, police searched the property where Garland sold drugs. In a shed, they found methamphetamine and guns.

The government charged Garland with eight federal crimes.  He went to trial, where the government played portions of the debriefings from the first, third, and fourth recorded buys. Garland objected, arguing that the debriefings contained hearsay.  The district court admitted them under the residual exception to the rule against hearsay.  *See* Fed. R. Evid. 807.  At the conclusion of the trial, the jury convicted Garland of five counts of distributing methamphetamine (one for

each recorded buy), one count of possessing a firearm in furtherance of a drug-trafficking crime (the last recorded buy), one count of possession of methamphetamine with intent to distribute it (the methamphetamine found during the shed search), and one count of possessing firearms as a felon (the guns found during the shed search).

Garland now appeals his convictions, arguing that the district court erred in admitting the debriefing evidence. The government asserts that no error occurred and, alternatively, if error occurred, it was harmless. Garland does not contend that the debriefings prejudiced him as to any of the distribution charges. Rather, he claims they hurt his chances of acquittal on the firearms and possession-with-intent-to-distribute charges. We disagree and conclude that error, if any, in admitting the debriefing evidence was harmless.

*In Furtherance Charge*. The jury convicted Garland of possessing a firearm in furtherance of the last recorded buy. Yet the government never played the debriefing from that buy. The debriefings it played came from prior buys, and they included statements placing guns nearby Garland during those crimes. To be sure, those statements might have suggested that Garland possessed a gun in furtherance of the last buy. But the government presented overwhelming direct evidence of his guilt. It introduced the video from the last buy, which showed a rifle displayed within Garland's reach. And it called as a witness the confidential informant, who testified that Garland had a rifle within reach and a pistol on the desk where he sat. Strategically placing a gun for easy access during a drug-trafficking crime is sufficient to possess the gun in furtherance of that crime, *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001), and here the government's evidence proved that Garland had done just that.

*As a Felon Charge*. The jury convicted Garland, a felon, of possessing the guns police found during the shed search. Yet the briefings Garland objected to were unrelated to this crime;

they occurred, and the confidential informant recorded them, well before the police searched the property. Still, Garland contends, they contained statements connecting him to the shed. Further, he claims, admitting them prejudiced him because the record contained "conflicting evidence" of who controlled the shed. But the conflict Garland sees is weak. An officer did testify that, during the search, Garland's girlfriend said the shed belonged to someone else. Her statement, however, was unaccompanied by any additional information (such as who that person was or how long he or she had controlled the shed). And two videos showed Garland running his drug business out of the shed—selling methamphetamine to the informant from behind a desk. So to connect Garland to control of the shed, the jury did not have to believe the informant; the videos gave jurors a first-person view.

*Intent-to-Distribute Charge*. The jury convicted Garland of possessing, with the intent to distribute, the methamphetamine police found during the shed search. Again, the debriefing evidence related to events occurring well before the search. Again, Garland complains that this evidence connected him to the shed when there was "substantial doubt" over who controlled the shed. But again, the government presented overwhelming, persuasive evidence that the shed was the headquarters for Garland's drug business.

\*　　\*　　\*

"[U]nless it is more probable than not that [an] error materially affected the verdict," *United States v. Caver*, 470 F.3d 220, 239 (6th Cir. 2006) (citation omitted), we will not vacate a defendant's convictions. In general, improperly admitted evidence that is merely cumulative of other, properly admitted evidence does not create that probability. *See, e.g.*, *Tolliver v. Sheets*, 594 F.3d 900, 931 (6th Cir. 2010).

The government bears the burden of showing, by a preponderance of the evidence, that the alleged error did not materially affect the verdict. *United States v. Young*, 847 F.3d 328, 349-50 (6th Cir. 2017). It sustained that burden here. The debriefings here were no more than cumulative, less-compelling evidence of Garland's possession of a gun in furtherance of a drug-trafficking crime and his control of the shed (and thus his constructive possession of the methamphetamine and guns police found inside). Because the government presented overwhelming credible evidence of Garland's guilt, we are confident that, even in the absence of the debriefings, the jury would have convicted him on all counts. We therefore affirm his convictions.